IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Virginia

```
┌─────────────────────────────┐
│   F  I  L  E               │
│                             │
│       AUG 1 1 2009          │
│                             │
│   CLERK, U.S. DISTRICT COURT│
│        RICHMOND, VA         │
└─────────────────────────────┘
```

JOYCE SPAIN

    Plaintiff,

v.                        Civil Action No. 3:09cv266

VIRGINIA COMMONWEALTH UNIVERSITY,
et al.,

    Defendants.

### MEMORANDUM OPINION

This matter is before the Court on the Defendants' Motion to Dismiss (Docket No. 6).  For the reasons set forth below, the motion will be granted.

### BACKGROUND

The Plaintiff, Joyce E. Spain,[1] is a former receptionist at the Virginia Commonwealth University ("VCU") School of Education.  On May 13, 2009, Spain brought this action against VCU and the Virginia Department of Labor and Industry ("VDOLI") asserting the Defendants': (1) violation of the Worker Adjustment and Retraining Notification Act ("WARN Act"); (2) "race discrimination" in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); (3) violation of the

---

[1] Spain is proceeding pro se in this matter.

Equal Pay Act; and (4) Retaliation.  The Complaint reveals the following factual exposition.[2]

In February 2007, Spain was hired as a receptionist in the School of Education at VCU.  Amended Compl. at ¶ 1.  On May 25, 2007, Spain filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging "race discrimination."  Id. at ¶ 2.  On July 30, Spain filed a second charge with the EEOC alleging "retaliation."  Id. at ¶ 3.

On September 21, 2007, Spain received a letter from VCU informing her that her position would be "abolished" in the following month.  Id. at ¶ 4.  On October 2, 2007, Spain was offered an alternate position with VCU as an Administrative Assistant in the School of Education, Child Care Development Center.  Id. at ¶ 5.  However, because this position paid a salary of approximately $100 per month less than her former position, Spain declined VCU's offer of employment.  Id.  Spain then applied for several other positions at VCU and with other state agencies, but she did not receive any job offers.  Id. at ¶¶ 6, 7.

In 2008, VCU's Department of Human Resources contacted Spain to offer her a position as an Administrative

---

[2] Spain filed an Amended Complaint on May 20, 2009.  In the Amended Complaint, nine bullet points are listed under the heading of "Summary."  The Court will refer to those points as if they had been asserted in numbered paragraphs.

Assistant in the Mathematics Department.  Id. at ¶ 8. Spain accepted this position, but she "worked shortly and quit/did not return."  Id.  On June 5, 2008, Spain filed a third charge with the EEOC alleging "retaliation" for not being preferentially [] hired on any of the positions [she] applied for."  Id. at ¶ 9.

On July 2, 2009, the Defendants filed this Motion to Dismiss seeking the dismissal of all of Spain's claims.  On July 16, 2009, Spain filed a "Response of Opposition," which appended a lengthy series of Exhibits.  Exhibit A documents the Plaintiff's first charge of "race discrimination," which was filed with the EEOC and the Virginia Council on Human Rights.  In this first charge, Spain asserted that she was discriminated against when she "was not afforded an interview for the positions of Administrative Assistant," and that she had "been subjected to a difference in treatment such as being required to hang posters and being treated rudely by my co-workers."

Exhibit B documents the second EEOC charge filed by Spain alleging "retaliation."  In this second charge, Spain reported a controversy about a "delivery slip," stated that she had been given "extra tasks without assistance," and alleged that she was not interviewed for two employment positions at VCU.  Exhibit B also includes an undated e-

mail from the Assistant Dean for Student Affairs asking that Spain "look beyond [her] anger and support the work of the Dean's Office as a member of the team."

Exhibit C documents the third EEOC charge filed by Spain where she again alleged "retaliation." In this third charge, Spain stated, "I believe I was laid off and denied hire in retaliation for the filing of my previous charges of discrimination." Exhibit C also presents a letter where the Dean of the School of Education informed Spain that her position in the Dean's Office was being eliminated due to a "reduction in funding."

Exhibits D and G document Spain's "Notice of Suit Rights" from the EEOC with respect to the first two charges of discrimination/retaliation. Exhibit E documents Spain's declination of placement by VCU into a new position as an Administrative Assistant because it would result in a decrease in her salary. Exhibit F substantiates that Spain was offered a position through the "preferential hiring" process at VCU. Exhibit G provides the receipt of Spain's "Notice of Suit Rights" from the Department of Justice with respect to the first two EEOC charges filed by Spain. Exhibit H contains Spain's "bank statements of deposit," from her layoff date to the start of severance pay, to support her claim for "general damages." Exhibit I details

the "legal fees" expended by the Spain in support of this
action.

### I.   The Applicable Legal Standard

A motion to dismiss under Fed. R. Civ. P. 12(b)(6)
seeks to test the legal sufficiency of the factual
allegations made in the Complaint. Under Fed. R. Civ. P.
8(a)(2), a pleading must contain a "short and plain
statement of the claim showing that the pleader is entitled
to relief." Id. As the Supreme Court held in Bell
Atlantic v. Twombly, 550 U.S. 544 (2007), the pleading
standard that Rule 8(a) announces does not require
"detailed factual allegations," but it demands more than an
unadorned accusation. Id. at 555. A pleading that offers
mere "labels and conclusions" or "a formulaic recitation of
the elements of a cause of action will not do." Id. Nor
does a complaint suffice if it tenders only "naked
assertion[s]" devoid of "further factual enhancement." Id.
at 557.

To survive a motion to dismiss, a complaint must
contain sufficient factual matter, accepted as true, to
"state a claim to relief that is plausible on its face."
Id. at 570. A claim has facial "plausibility" when the
plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable

for the misconduct alleged. Id. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Id. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." Id. at 557. This established pleading standard governs "all civil actions and proceedings in the United States district courts." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009).

Furthermore, because courts are instructed to take "special care with *pro se* litigants," see, e.g., Moore v. City of Harriman, 272 F.3d 769, 799 (6th Cir. 2001), the Court will carefully assess the Complaint for any factual averments that could plausibly support an inference of discrimination. Cf. Haines v. Kerner, 404 U.S. 519, 520 (1972) (courts have a duty to "interpret charitably" pleadings filed by *pro se* litigants). These assertedly supporting facts are largely found in the exhibits attached to Spain's opposition to the Defendants' Motion to Dismiss, as detailed above.

Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into

one for summary judgment.  Witthohn v. Fed. Ins. Co., 164 Fed. Appx. 395, 396-97 (4th Cir. 2006).  However, there are a number of exceptions to this rule.  Specifically, a court "may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint, so long as the authenticity of these documents is not disputed," without converting the motion into a motion for summary judgment.  Id.; accord Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999) (permitting consideration of extraneous material if such materials are "integral to and explicitly relied on in the complaint").

Through her attached exhibits, Spain has amplified her allegations with a number of averments that are not present in the text of the Complaint itself.  Nevertheless, these exhibits, which respect Spain's: (1) exhaustion of her administrative remedies through the filing of three separate EEOC charges; (2) decision to decline a lower paying job at VCU; and (3) claim of damages, are all explicitly referenced in the Amended Complaint.  Therefore, the Court will consider these exhibits without converting the instant motion into one for summary judgment.

## II.  The WARN Act

The  WARN  Act  was  enacted  by  Congress  to  protect employees  from  being  terminated  as  a  result  of  plant closures  or  mass  layoffs  without  advance  notice,  and  to thereby  provide  them  with  "some  transition  time  to  adjust to  the  prospective  loss  of  employment,  to  seek  and  obtain alternative  jobs  and,  if  necessary,  to  enter  skill  training or  retraining  that  will  allow  these  workers  to  successfully compete  in  the  job  market."  20  C.F.R.  § 639.1(a).

Specifically,  "[w]ith  some  exceptions  and  conditions, WARN  forbids  an  employer  of  100  or  more  employees  to  order a  plant  closing  or  mass  layoff  until  the  end  of  a  60-day period  after  the  employer  serves  written  notice  of  such  an order."   N. Star Steel Co. v. Thomas,  515  U.S.  29,  31 (1995)  (citing  29  U.S.C.  § 2102(a)).   Under  the  WARN  Act, the  employer  must  notify  "each  affected  employee"  or  "each representative  of  the  affected  employees."   29  U.S.C.  § 2102(a)(1).   An  employer  who  violates  the  notice  provisions of  the  WARN  Act  is  liable  for  penalties  by  way  of  a  civil action  that  may  be  brought  "in  any  district  court  of  the United  States  for  any  district  in  which  the  violation  is alleged  to  have  occurred,  or  in  which  the  employer transacts  business."   29  U.S.C.  § 2104(a)(5).

8

The WARN Act broadly defines an "employer" as follows: "(1) the term 'employer' means any *business enterprise* that employs - (A) 100 or more employees, excluding part-time employees; or (B) 100 or more employees who in the aggregate work at least 4,000 hours per week . . . ." 29 U.S.C. § 2101(a)(1) (emphasis added). The Act, however, does not explicitly extend its application to public employers or their agencies. See id. In this sense, the WARN Act stands in contrast to other pieces of federal labor-relations legislation where Congress either specifically extended coverage to include governmental entities, such as in Fair Labor Standards Act, see 29 U.S.C. § 203, or specifically excluded the coverage of governmental entities, such as in the National Labor Relations Act, see 29 U.S.C. § 152. Accordingly, the Defendants argue that "such an omission is fatal to this civil action" and that the Defendants are not answerable to claims grounded in the WARN Act. Defs' Mot. at 3.

Although the Defendants correctly note "that the WARN Act does not specifically include governmental entities in its definition of employer, this does not lead to the unescapable [sic] conclusion that the WARN Act does not apply to such entities." Castro v. Chi. Hous. Auth., 2001 U.S. Dist. LEXIS 23631, at 14-15 (N.D. Ill. June 21, 2001).

9

Significantly, after extensively canvassing the legislative history of the WARN Act, courts have found no clear directive as to whether governmental entities were intended to fall within the statutory definition of "employer." <u>See</u> <u>Castro v. Chicago Hous. Auth.</u>, 360 F.3d 721, 729 (7th Cir. 2004). Indeed, this argument presents an issue of first impression in the Fourth Circuit, where it been noted that "the specific language of the [WARN] Act is inartful, if not confusing." <u>UMW v. Martinka Coal Co.</u>, 202 F.3d 717, 720 (4th Cir. 2000).

Nevertheless, wholly apart from the textual omission contained in the statute, there is persuasive reason to conclude that public entities such as those represented by the Defendants should be excluded from the coverage of the WARN Act. Principally, the Department of Labor ("DOL") has interpreted the statute to exclude such public entities so long as they are not actively engaged in the standard activities of a "business enterprise." Specifically, the DOL has analyzed the WARN Act as follows:

> Because of the use of the term "business enterprise" [in the statutory definition of "employer"], *DOL concludes that regular Federal, State, and local government public agencies and services are outside the purview of WARN . . . . DOL agrees that the underlying intent of WARN is worker protection. Given the nature and the language of the law, DOL concludes that the term "business enterprise" used in the statute*

> includes public and quasi-public entities which
> engage in business (i.e., take part in a
> commercial or industrial enterprise; supply a
> service or good on a mercantile basis, or provide
> independent management of public assets, raising
> revenue and making desired investments). Whether
> a particular public or quasi-public entity is
> covered will be determined by the functional test
> described above and by an organizational test,
> i.e. whether the entity is managed by a
> separately organized governing body with
> independent authority to manage its personnel and
> assets.

Castro, 2001 U.S. Dist. LEXIS 23631, at *18-20 (emphasis added).

Under the principles announced in Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984), a court should only reject "administrative constructions [that] are contrary to clear congressional intent." Id. at 843 n.9. As explained above, congressional intent is unclear regarding the definition of "employer" under the WARN Act. Hence, the court must defer to the DOL's interpretation "so long as it is a permissible construction of the statute," which it clearly is. See Stinson v. United States, 508 U.S. 36, 44 (1993); accord Castro, 360 F.3d at 729 (embracing an identical construction of the statute).

It is not alleged that either VCU or the VDOLI satisfy the criteria articulated by the DOL for being deemed a "business enterprise" under the Act. Therefore, Spain's

11

claim against the Defendants under the WARN Act fails as a matter of law.

### III.   The Plaintiff's Claims Under Title VII

In her Complaint, Spain alleges that she was a victim of "race discrimination" and "retaliation" in violation of Title VII.   See Amended Compl. at ¶¶ 2, 9.   Specifically, Spain contends that she was terminated on the basis of her race, and that, subsequent to her termination, she was discriminated against in the hiring process when seeking employment with the Defendants.   See id. at ¶¶ 3, 9.

Title VII prohibits discrimination on the basis of "race, color, religion, sex, or national origin."   42 U.S.C. § 2000e-2.   In so doing, Title VII "makes plain the purpose of Congress to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens."   St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 526 (1993).

### A.   The Procedural Prerequisites For Filing Suit Under Title VII

The Defendants' first ground for seeking the dismissal of Spain's Title VII claims is that she has assertedly failed to comply with the procedural requirements of the

statute.   Def's Mot 6, 7.   Title VII requires that a plaintiff first timely file administrative charges with the EEOC.   <u>McPherson v. N.Y. City Dep't of Educ.</u>, 457 F.3d 211, 213 (2d Cir. 2006).   Thereafter, a Title VII plaintiff must receive a "right-to-sue" letter and must file her action in court within 90 days of the receipt of the right-to-sue letter.   <u>Id.</u>; 42 U.S.C. § 2000e-5(f)(1) ("[W]ithin ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge."); <u>see</u>, <u>e.g.</u>, <u>Watts-Means v. Prince George's Family Crisis Ctr.</u>, 7 F.3d 40, 42 (4th Cir. 1993).   Consequently, a legal action pursuant to Title VII "survives for a period of 90 days, after which it is forever extinguished."   <u>EEOC v. Cleveland Mills Co.</u>, 502 F.2d 153, 155-56 (4th Cir. 1974).

In this case, the proper agency to provide Spain with a right-to-sue letter was the DOJ, not the EEOC. 20 U.S.C. § 2000e-5(f)(1) provides, in pertinent part:

> In the case of a respondent which is a government, governmental agency, or political subdivision, if the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission shall take no further action and shall refer the case to the Attorney General who may bring a civil action against such respondent in the appropriate United States district court. . . . [If the charge is dismissed, no action is taken within 180 days, or the Attorney General has not filed a civil action] the Attorney General in a case involving a government, governmental agency, or political

> subdivision, shall so notify the person aggrieved
> and within ninety days after the giving of such
> notice a civil action may be brought against the
> respondent named in the charge . . . by the person
> claiming to be aggrieved . . . .

Id. "The statute thus provides for a right-to-sue letter from the DOJ, not the EEOC," in cases where the EEOC has been "unable" to obtain a conciliation agreement with a government entity. Kane v. Iowa Dep't of Human Servs., 955 F. Supp. 1117, 1133-34 (N.D. Iowa 1997).

In her attached exhibits, Spain provided copies of: (1) the "Charges of Discrimination" filed with the EEOC; (2) the EEOC's "Dismissal and Notice of Rights;" and (3) the Department of Justice's "right-to-sue" letters, for the following charges:

- Charge No. 2007-01202: EEOC charge of "Race Discrimination," dated June 15, 2007; EEOC Dismissal Notice, dated September 28, 2007; DOJ right-to-sue notices of October 24, 2007 and February 5, 2008. See Pltf's Opp, at 8, 32, 36, 37.

- Charge No. 2007-01332: EEOC charge of "Retaliation," dated July 30, 2007; EEOC Dismissal dated September 28, 2007; DOJ right-to-sue notices of October 24, 2007 and February 5, 2008. See Pltf's Opp. at 11, 31, 35 and 38 of 48.

- Charge No. 2008-01256: EEOC charge of "Retaliation," dated June 5, 2008; EEOC Dismissal June 30, 2009; No DOJ right-to-sue notice has been proffered by the Plaintiff. See Pltf's Opp. at 18, 21.

14

In this case, it is clear that Spain's claims relating to the first and second EEOC charges are time barred. The final communication from the Department of Justice notifying Spain of her right to sue with respect to these two charges occurred on February 5, 2008. Spain, however, filed this action on May 30, 2009, well after the 90-day deadline for filing suit had elapsed. Hence, the Defendants' Motion to Dismiss Spain's claims concerning these two allegations will be granted.[3]

With respect to Spain's third EEOC charge, Exhibit D reveals that Spain filed her Complaint in this case prior to the EEOC'S resolution of the investigation of her charge. See Exhibit D ("The EEOC is closing its file on this charge for the following reason – charging party has filed in federal district court."). Hence, Spain filed this action before receiving a right-to-sue letter from either the EEOC or the Department of Justice. See McPherson, 457 F.3d at 213. Therefore, this action is

---

[3] Although unaddressed within the Fourth Circuit, courts have held that when a plaintiff receives "two Right-to-Sue Letters - one from the EEOC and one from the Attorney General's Office - the 90-day period [runs] from the date of the EEOC letter, which was received first." Zustovich v. Harvard Maint., Inc., 2009 U.S. Dist. LEXIS 22640, at *19, 20 n.1 (S.D.N.Y. Mar. 20, 2009) (citing Spencer v. New York City Transit Auth., 1999 U.S. Dist. LEXIS 408, at *38-40 (E.D.N.Y. Jan. 14, 1999)). Given that more than 90 days have elapsed since Spain's receipt of the later issued right-to-sue-letter from the DOJ, however, this analysis is immaterial to the facts of this case.

premature relative to her third EEOC charge, and that claim will also be dismissed.[4]

B.   The Plaintiff's Asserted Prima Facie Case Of Discrimination Under Title VII

Assuming *arguendo* that Spain had complied with the procedural prerequisites for filing suit under Title VII (which she has not), the following analysis governs her claims against the Defendants with respect to her first two EEOC charges of discrimination.

Under Title VII, there are two ways of proving either discrimination or retaliation: (1) through direct evidence; or (2) through circumstantial evidence under the burden-shifting scheme established in McDonnell Douglas v. Green, 411 U.S. 792, 802-05 (1973).[5]  In the first method of proof, a plaintiff must provide "evidence of conduct or statements

---

[4] That claim will be dismissed without prejudice.  For reasons that are inextricably intertwined with the analysis below, however, which specifically addresses the substance of Spain's first two EEOC charges of discrimination/retaliation referenced in the Complaint, the Court has significant reservations about the merits of the third EEOC charge. Hence, the Court counsels Spain to consider the strictures of Fed. R. Civ. P. 11 before filing any subsequent action against the Defendants.

[5] In McDonnell Douglas, the Supreme Court set forth a burden-shifting scheme for discriminatory-treatment cases.  Under the scheme, a plaintiff must initially establish a *prima facie* case of discriminatory treatment.  McDonnell Douglas, 411 U.S. at 802.  If the plaintiff is able make such a *prima facie* showing, the evidentiary burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its challenged employment action.  Id.  If the employer meets this burden, then the presumption of intentional discrimination disappears, but the plaintiff can still prove disparate treatment by demonstrating that the employer's proffered explanation for the adverse employment action is pretextual.  Id.; see Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000).

16

that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." Rhodes v. FDIC, 257 F.3d 373, 391-92 (4th Cir. 2001). Spain has not alleged the existence of any direct evidence of intentional discrimination or retaliation, so the Complaint does not assert a plausible claim for relief if it is assessed for legal sufficiency under the direct evidence mode of analysis.

Thus, the substance of Spain's charges (if not barred for the previously stated reasons) could survive only if the Complaint presented plausible claims when measured against the familiar McDonnell Douglas burden-shifting scheme. See id. Accordingly, to survive a motion to dismiss under this approach, Spain's Complaint must assert a plausible prima facie case with respect to each of her claims under Title VII. Totten v. Norton, 421 F. Supp. 2d 115, 120 (D.D.C. 2006) ("If . . . it appears beyond doubt that a Title VII [] plaintiff would be unable to satisfy one or more of these prima facie elements, then the Court must grant defendant's motion to dismiss.").

i. The *Prima Facie* Case Of Discrimination For Discrimination In Failure To Hire

In the wake of her termination from the School of Education, Spain states that she "applied for several

17

positions due preferential hiring [sic] and received one interview although I was not hired at [VCU].    I also applied for several state positions within my layed-off [sic] paygrade, with a preferential hiring card and did not receive one interview . . . ."  Amended Compl. at ¶¶ 6, 7.

To prove a prima facie case of discriminatory failure to hire under Title VII, a plaintiff must prove that: (1) she is a member of a protected group; (2) she applied for the position in question; (3) she was qualified for the position; and (4) she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination.  See, e.g., Brown v. McLean, 159 F.3d 898, 902 (4th Cir. 1998).

In the Amended Complaint, Spain alleges that she was discriminated against on the basis of her "race," although she does not specify her race.    Amended Compl. at ¶ 2. Additionally, the Complaint states that she applied for a number of positions following her termination from VCU in October 2007.    Id. at ¶ 4.    Thus, Spain has satisfied the first two prima facie elements of her discriminatory failure to hire claim.

Nevertheless, Spain's Complaint is silent concerning her qualifications for any of the positions for which she applied.    Moreover, the Complaint fails to detail important

18

circumstances surrounding Spain's applications for employment, including whether her applications were timely submitted, and whether the jobs were eventually filled by candidates outside of the relevant protected class. This lack of factual detail makes it difficult for Spain to articulate a plausible inference of unlawful discrimination against either Defendant. See Brown, 159 F.3d 902.

More fundamentally, however, the uncontested facts as presented by Spain demonstrate that, after Spain learned of her impending termination, but *before she* was actually laid off, Spain declined a replacement position at VCU for reasons of salary. Exhibit E at 1, 2. Furthermore, Spain has plead that she was *re-hired* by VCU in 2008 for a position in the Mathematics Department. See Amended Compl. at ¶ 5. Any alleged discriminatory intent in hiring is belied by the fact that Spain was offered a similar job by the same employer following the elimination of her position at the School of Medicine, and also by the fact that she ultimately found employment with VCU after she was laid off.

These facts demonstrate that Spain has failed to state a plausible prima facie claim of discrimination in connection with the Defendants' failure to hire her for

19

certain positions.   In fact, her claims are implausible under her own description of them.

### ii.   The *Prima Facie* Case Of Discrimination In Job Termination[6]

To establish a prima facie case of discriminatory termination under Title VII, a plaintiff must show that: "(1) she is a member of a protected class; (2) she was qualified for her job and performing at a satisfactory level; (3) she was terminated; and (4) she "was replaced by a similarly situated applicant outside her protected class." Holiday v. New Hanover County Registrar of Deeds, 317 Fed. Appx. 344, 345 (4th Cir. 2009) (citing Hicks, 509 U.S. at 502).

In this case, Spain's Complaint is devoid of any allegation that she "was replaced by a similarly situated applicant outside her protected class." Holiday, 317 Fed. Appx. at 345.   Indeed, the uncontested documentation provided by Spain indicates that her position was eliminated due to "a reduction in funding for the School of Education."   Exhibit C at 2; see also Amended Compl. at ¶ 4 ("I received notice that my position will be abolished the following month.").   Therefore, it is evident that Spain's employment was eliminated for race-neutral reasons, and her

---

[6] Spain was never terminated from a position at VDOLI.   Therefore, this allegation can only be asserted against VCU.

allegation of discriminatory termination is utterly implausible and will be dismissed.

### iii. The Plaintiff's Asserted Prima Facie Case Of Retaliation Under Title VII

Spain also alleges that she has been the victim of "retaliation" for filing her charges of discrimination with the EEOC. See Amended Compl. at ¶ 9. Specifically, Spain contends that she was retaliated against by: (1) not being allotted any interviews for the positions for which she applied; and (2) being terminated from her position at the School of Education. See id. at ¶¶ 3, 9.

To establish a prima facie case of retaliation, a plaintiff must demonstrate that: (1) she engaged in protected activity under Title VII; (2) the employer took adverse employment action against her; and (3) there was a "causal connection" between the protected activity engaged in by the plaintiff and the subsequent action taken by the defendants. Coleman v. Loudoun County Sch. Bd., 294 Fed. Appx. 778, 781 (4th Cir. 2008).

There is no dispute that Spain filed her first two charges of discrimination with the EEOC, or that certain adverse employment actions followed this protected activity. This chronology alone, however, does not "plausibly" establish prohibited retaliation.

Fundamentally, Spain does not allege the existence of any facts supporting the claim that her protected activity was causally connected to "the employer's decision-making process and had a determinative influence on the outcome." Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277, 286 (4th Cir. 2004) (en banc). Specifically, Spain does not allege that the decision-maker who carried out the challenged adverse employment actions was in any way involved in the prior charges of discrimination, or that this decision-maker even knew of her protected activity. Spain also fails to allege the existence of any communication between the Defendants at any time.

Indeed, as Spain herself admits: "It is uncertain and impossible to know if my position would have been abolished resulting in my job termination/layoff had not the first charge been filed." Pltf's Opp. at 2. Succinctly stated, a bad outcome absent a plausible illegal motive is insufficient to advance the type of "causal connection" necessary to assert a viable claim of retaliation. Smith v. Commonwealth, 2009 U.S. Dist. LEXIS 60828, *12-13 (E.D. Va. July 15, 2009) ("Smith has articulated no other facts that even remotely suggest that his race was the basis for the denial of his voter registration. His entire claim of a violation of his rights rests on the inference that,

because he is African-American and his voter's registration was denied, it must be the case that the former fact caused the latter. This is the very sort of pleading the Supreme Court condemned as inadequate in Twombly."). The same deficiency present in Smith is true of Spain's retaliation claim. Therefore, Spain's claims of retaliation will be dismissed.

## IV. The Plaintiff's Claims Under The Equal Pay Act

Spain also has asserted a claim under the Equal Pay Act. To establish a prima facie case of disparate pay under the Equal Pay Act, a plaintiff must prove: "(1) that her employer has paid different wages to employees of opposite sexes; (2) that said employees hold jobs that require equal skill, effort, and responsibility; and (3) that such jobs are performed under similar working conditions." Gustin v. W. Va. Univ., 63 Fed. Appx. 695, 698 (4th Cir. 2003).

In her Complaint, Spain does not allege the existence of any gender-based pay differential at the place of employment of either Defendant. In fact, the issue of gender is nowhere mentioned in the Complaint. Therefore, the allegations in the Complaint are facially deficient to

assert a claim under the Equal Pay Act and any such claim is dismissed.[7]

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss (Docket No. 6) will be granted. Moreover, because her substantive legal claims suffer from fatal legal and procedural defects, leave to amend will not be granted.

It is so ORDERED.

_____ /s/      REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date:  August 11, 2009

---

[7] In her Response Of Opposition, Spain states that she opposes the Defendants' Motion to Dismiss based, in part, on the Defendants' violations of the Age Discrimination in Employment Act ("ADEA") of 1967, 29 U.S.C.S. § 621, and the Americans with Disabilities Act of 1990 ("ADA"). Spain's Complaint, however, is wholly devoid of any allegation pertaining to either her age or her disability. Therefore, any claim asserted under these statutes is dismissed.